IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARIA M.,[1]

   Plaintiff,

  v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

   Defendant.

_____

No. 6:19-CV-00940-MC

**OPINION AND ORDER**

**MCSHANE, Judge**:

 Plaintiff Maria M. was denied Disability Insurance Benefits and Supplemental Security Income Payments under Titles II and XVI of the Social Security Act. She appeals to this Court, arguing that the Administrative Law Judge ("ALJ") erred by discounting her symptom testimony, improperly evaluating medical opinions, and conducting an inadequate analysis at step five. Because the Commissioner of Social Security's ("Commissioner") decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

**<u>STANDARD OF REVIEW</u>**

 The Court has jurisdiction under 42 U.S.C. § 405(g). A reviewing court will affirm the Commissioner's decision if it is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Id.*; *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party.

1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the Court reviews the entire administrative record, weighing both the evidence that supports and detracts from the ALJ's decision. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

## **DISCUSSION**

The Social Security Administration uses a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520; 416.920 (2012). The initial burden of proof rests on the claimant to meet the first four steps. If the claimant satisfies his burden with respect the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant can adjust to other work after considering the claimant's RFC, age, education, and work experience. *Id.* If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner finds that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001).

At step two, the ALJ found that Plaintiff had the following severe impairments: sleep apnea; dual ventilator disorder; chronic obstructive pulmonary disease; asthma; restrictive lung disease; hypoxemia; obesity; diabetes mellitus; right knee meniscal tear; mild chondromalacia; mild acromioclavicular degenerative joint disease; migraines; carpal tunnel syndrome; plantar fasciitis; persistent depressive disorder; generalized anxiety disorder; posttraumatic stress

disorder; factitious disorder; and history of substance abuse. Tr. 47.[2] The ALJ assessed Plaintiff

with the following RFC:

> The claimant . . . [can] perform sedentary work as defined in 20 CFR 404.1567(a)
> and 416.967(a) except that she can never climb ladders, ropes, or scaffolds and can
> occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She
> can occasionally push and pull and occasionally operate foot controls. She needs to
> avoid concentrated exposure to extreme temperatures, wetness, humidity,
> pulmonary irritants, and hazards in the workplace. She can occasionally reach
> overhead bilaterally and frequently reach in all other directions bilaterally. She can
> frequently handle and finger bilaterally. She can perform simple, routine, repetitive
> tasks consistent with unskilled work. She is limited to low-stress work, which is
> defined as work requiring few decisions and few changes throughout the workday.
> She must be permitted to use a hand-held device, such as a cane, at all times while
> standing/walking.

Tr. 49. Based on the vocational expert's testimony, the ALJ concluded Plaintiff could not perform

past relevant work but could perform other jobs that exist in significant numbers in the national

economy. Tr. 55–56. The ALJ thus determined that Plaintiff was not disabled. Tr. 56–57.

## I. Plaintiff's Symptom Testimony

Plaintiff asserts that the ALJ erred by rejecting Plaintiff's subjective symptom testimony.

This testimony can be rejected if there is "clear and convincing reasons" supported by "substantial

evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). But the ALJ is

not "required to believe every allegation of disabling pain, or else disability benefits would be

available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*,

674 F.3d 1104, 1112 (9th Cir. 2012) (citation omitted). The ALJ may "consider a range of factors,"

including:

> (1) whether the claimant engages in daily activities inconsistent with the alleged
> symptoms; (2) whether the claimant takes medication or undergoes other treatment
> for the symptoms; (3) whether the claimant fails to follow, without adequate
> explanation, a prescribed course of treatment; and (4) whether the alleged
> symptoms are consistent with the medical evidence.

---

[2] "Tr" refers to the Transcript of the Social Security Administrative Record provided by the Commissioner.

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). An ALJ can also consider a claimant's own inconsistent statements. *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017) (citation omitted). The Court will uphold an ALJ's credibility finding even if all the ALJ's rationales for rejecting clamant testimony are not upheld. *Batson*, 359 F.3d at 1197.

The ALJ discounted Plaintiff's testimony for three reasons. First, the ALJ noted that Plaintiff gave inconsistent statements about her symptoms and ability to work. Tr. 52. "An ALJ may consider inconsistent statements by a claimant in assessing her credibility." *Popa*, 872 F.3d at 906. Plaintiff's inconsistent statements here included her reporting often that she was doing well, that she could manage her stress, attend classes multiple times a week, and take care of her three children. Tr. 52–53 (citing tr. 3368, 3376, 3381, 3574, 3594, 3624, 3626, 3629, 3632, 3635, 3638).

Second, the ALJ found that Plaintiff's daily activities were inconsistent with her subjective symptom testimony. Tr. 51–52. An ALJ may consider whether a claimant's daily activities are inconsistent with their testimony. *Lingenfelter*, 504 F.3d at 1040. Plaintiff alleged that she could only walk a few feet before needing to rest. Tr. 620. But the ALJ noted that Plaintiff reported that she walked or exercised routinely. Tr. 51 (citing tr. 839, 1951, 2290, 2292, 2316, 3043). The ALJ also noted that Plaintiff raised her three children as a single parent, including a child who required constant care. Tr. 52 (citing tr. 880). Plaintiff testified that this required her to complete household chores, shop in stores, and prepare simple meals. Tr. 615–19.

Finally, the ALJ's assessment of Plaintiff's testimony contains multiple citations to inconstancies with the medical record. *See* tr. 50–55. An ALJ may consider whether Plaintiff's alleged symptoms accord with the medical record. *Lingenfelter*, 504 F.3d at 1040. For example, the ALJ noted that various physical exams did not support her allegations of total debilitation. Tr.

51 (citing tr. 1200 (showing "no severe" lung disease); tr. 969, 2732 (showing "mild" degenerative changes of the lumbar spine); tr. 671, 893–94, 2732, 3411 (showing normal or negative findings upon examination); tr. 2791, 2836 (recommending regular physical activity)).

In sum, the ALJ provided clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony. *Lingenfelter*, 504 F.3d at 1040; *Popa*, 872 F.3d at 906.

## II. The ALJ's Weighing of Medical Evidence

Plaintiff next argues that the ALJ erred by rejecting the opinions of Dr. Amy Sutkus, Dr. Thomas Potter, Dr. Jennifer Felker, and Dr. Peter LeBray without providing clear and convincing reasons. Pl.'s Op. Br 15–18, ECF No. 11. But Plaintiff does not explain *why* the ALJ did not meet the clear and convincing standard. *See* Pl.'s Op. Br. 18. Accordingly, the Commissioner counters that Plaintiff has waived any challenge by merely "summarize[ing] some of the medical evidence and mak[ing] a conclusory statement." Def.'s Br. 7, ECF No. 15 (citing *NW Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 923–24 (9th Cir. 1996)).

Even if the Court assumes that Plaintiff did not waive her challenge of the ALJ's assessment of the medical opinions, the ALJ still did not err. "To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by *providing specific and legitimate reasons that are supported by substantial evidence.*" *Id.* (emphasis added). When evaluating conflicting medical opinions, an ALJ need not accept a brief, conclusory, or inadequately supported opinion. *Id.*

The ALJ provided specific and legitimate reasons supported by substantial evidence when giving little weight to Dr. Sutkus', Dr. Potter's, Dr. Felker's, and Dr. LeBray's opinions. Beginning

with Dr. Sutkus, the ALJ found that Dr. Sutkus' opinion restricting Plaintiff to well below sedentary work was inconsistent with Plaintiff's daily activities. Tr. 52, 3497–503. For example, the record shows that Plaintiff exercised often and took care of her children. Tr. 839, 880, 1951, 2290, 2292, 2316, 3043. Dr. Potter's opinion that Plaintiff could not comprehend instructions was rejected on similar grounds. Tr. 54, 3664–69. The ALJ specifically noted that Dr. Potter's own contemporaneous notes conveyed "no more than mild severity in mental functioning" and that Plaintiff reported that she could help her daughter with homework. Tr. 54 (citing tr. 3660–63, 3668). An ALJ can discount a physician's opinion because of inconsistency with the claimant's daily activities and inconsistency with a doctor's own notes. *Morgan Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601–02 (9th Cir. 1999); *Bayliss*, 427 F.3d at 1216. The ALJ therefore did not err in rejecting Dr. Sutkus and Dr. Potter's opinions.

Next, the ALJ gave little weight to Dr. Felker's opinion because it "lack[ed] explanation . . . and the paucity of substantiating contemporaneous treatment notes." Tr. 54. Dr. Felker opined that Plaintiff had extreme limitations in maintaining concentration, persistence, or pace and that Plaintiff needed to rest three hours in an eight-hour workday. Tr. 3478–96. As mentioned above, an ALJ does not have to accept a brief or inadequately supported opinion. *Bayliss*, 427 F.3d at 1216. The Court agrees with the Commissioner that because "Plaintiff was looking for a job, worked out [routinely], and was the sole caretaker for her children," the ALJ did not err in assigning little weight because of noted inconsistencies with other medical evidence. Def.'s Br. 9 (citing *Morgan*, 169 F.3d at 601).

Lastly, the ALJ assigned little weight to Dr. LeBray's opinion because of an inconsistency with his own treatment notes. Tr. 54 (citing tr. 1293–94, 1965–77). While Dr. LeBray opined that Plaintiff was only capable of part-time, isolated work, he also noted numerous times where

Plaintiff's testing efforts seemed lackadaisical as an attempt to appear impaired. *Compare* 1293–94 *with* tr. 1285, 1287–88. As noted above, an ALJ can discount a physician's opinion because of an inconsistency with their own notes. *Bayliss*, 427 F.3d at 1216.

The Court must uphold an ALJ's findings if they are supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. Here, the ALJ provided clear and convincing reasons supported by substantial evidence in the record when weighing the various medical opinions.

## III. The ALJ's Step Five Analysis

Plaintiff finally argues that the ALJ's step five analysis was error. Plaintiff specifically contends that if the ALJ had properly considered the medical opinions and Plaintiff's testimony, then the Court should find that the ALJ erred at step five of their analysis. Pl.'s Br. 18–20. But an ALJ only needs to base their step five analysis on evidence properly supported by the record. *See Batson*, 359 F.3d at 1197 ("The ALJ was not required to incorporate evidence from opinions of [claimant's] treating physicians, which were permissibly discounted." (citations omitted)); *Bayliss*, 427 F.3d at 1217 ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record. The ALJ's reliance on testimony the VE gave in response to the hypothetical therefore was proper."). Plaintiff cannot establish error here by simply restating her earlier arguments. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175–76 (9th Cir. 2008). Because the Court found that the ALJ did not err in discounting the many medical opinions or Plaintiff's testimony, then it follows that the ALJ also did not err at step five of their analysis. *Id.*

## CONCLUSION

For these reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 28th day of September, 2020.

　**_s/Michael J. McShane_____**
Michael J. McShane
United States District Judge